IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

**ANDREW T. ROMERO,**

      **Plaintiff,**

v.                                                     **No. CIV-16-121 LAM**

**NANCY A. BERRYHILL, Acting Commissioner**
**of the Social Security Administration,**

      **Defendant.**

# MEMORANDUM OPINION AND ORDER

**THIS MATTER** is before the Court on Plaintiff's *Motion to Reverse and Remand for a Rehearing With Supporting Memorandum* (*Doc. 19*), filed September 29, 2016 (hereinafter "motion"). On January 3, 2017, Defendant filed a response (*Doc. 23*) to Plaintiff's motion and, on January 18, 2017, Plaintiff filed a reply (*Doc. 24*). In accordance with 28 U.S.C. § 636(c)(1) and Fed. R. Civ. P. 73(b), the parties have consented to have the undersigned United States Magistrate Judge conduct all proceedings and enter a final judgment in this case. *See* [*Docs. 4 and 8*]. The Court has considered Plaintiff's motion, Defendant's response, Plaintiff's reply, and the relevant law. Additionally, the Court has meticulously reviewed and considered the entire administrative record. [*Doc. 13*]. For the reasons set forth below, the Court **FINDS** that Plaintiff's motion should be **DENIED in part** and **GRANTED in part** and that the decision of the Commissioner of the Social Security Administration (hereinafter "Commissioner") should be **REMANDED** for rehearing on the issue of availability of work that Plaintiff can perform.

.

# I. Procedural History

On July 2, 2009, Plaintiff filed applications for Disability Insurance Benefits (hereinafter "DIB") and Supplemental Security Income (hereinafter "SSI"), alleging disability that began on February 1, 2007 (*Doc. 13-7* at 2-6).[1]  Plaintiff's DIB and SSI applications were denied at the initial level on November 16, 2009 (*Doc. 13-6* at 2), and at the reconsideration level on July 7, 2010 (*id*. at 11).  Plaintiff requested a hearing to review the denial of his applications (*id*. at 18), and Administrative Law Judge Barry O'Melinn (hereinafter "ALJ") conducted a hearing on November 15, 2011 (*Doc. 13-4* at 2-43).  Plaintiff appeared, represented by his former attorney, and testified.  *Id*. at 7-33, 41.  Vocational Expert Elizabeth Wheeler also appeared, by phone, and testified.  *Id*. at 33-41.  On March 13, 2012, the ALJ issued a decision (*Doc. 13-3* at 11-20) (hereinafter "2012 Decision") finding that Plaintiff "has not been under a disability within the meaning of the Social Security Act from February 1, 2007, through the date of this decision" (*id*. at 11).  On May 8, 2012, Plaintiff requested that the Appeals Council review the ALJ's 2012 Decision.  [*Doc. 13-3* at 7].  On March 18, 2013, the Appeals Council denied Plaintiff's request for review on the ground that there was "no reason under our rules to review the [ALJ]'s decision."  *Id*. at 2.  Shortly thereafter, on May 1, 2013, Plaintiff filed new applications for SSI and DIB benefits, alleging an onset date of March 14, 2012.  [*Doc. 13-17* at 4-10 and 13-14, respectively].

---

[1] Plaintiff's last day of insured status for DIB was June 30, 2011.  [*Doc. 13-8* at 3].  Therefore, in order to receive DIB benefits, Plaintiff must have been disabled on or before that date.  *See* 42 U.S.C. § 423(a).  SSI benefits are not so limited.

Plaintiff's 2013 DIB application was denied on May 6, 2013, on the ground that he did not qualify for disability benefits because he did not have enough work credits.[2] [*Doc. 13-15* at 6]. Plaintiff's 2013 SSI application was denied initially on August 12, 2013 (id. at 9), and at the reconsideration level on December 30, 2013 (*id*. at 20). Plaintiff appealed the Appeals Council's March 18, 2013 ruling on his first claims to this Court, which subsequently issued a decision reversing and remanding that decision, on the ground that the ALJ impermissibly failed to discuss the weight he assigned to Dr. [K.] Glass's [November 2009] opinion." *Romero v. Colvin*, 13-0458 SMV, *Doc. 34* at 5 (D. N.M. September 8, 2014) (unpublished).

Following remand, the Appeals Council issued an October 23, 2014 order that: (1) vacated the ALJ's 2012 decision; (2) remanded the case back to the ALJ; and (3) directed the ALJ to combine Plaintiff's two pending claim files, create a single electronic record, and issue a new decision on the consolidated cases.[3] [*Doc. 13-14* at 44-45]. Pursuant to that order, the ALJ held a new hearing on August 26, 2015 (hereinafter "2015 Hearing"), at which Plaintiff appeared, represented by his current attorney, and testified. [*Doc. 13-13* at 3, 9-27]. Vocational Expert Sandra M. Trost also appeared and testified. *Id*. at 27-30. At the 2015 Hearing, Plaintiff's counsel requested to amend the alleged onset date of Plaintiff's disability to September 8, 2008.

---

[2] The record does not indicate whether Plaintiff appealed this decision. However, he had not worked since his first DIB application was filed and, based on that application, his DIB benefits expired on June 30, 2011 (*Doc. 13-8* at 3), which is prior to March 14, 2012, the onset date claimed in his second application (*Doc. 13-17* at 13-14).

[3] Although the remanded case was initially assigned to a different ALJ, it ultimately returned to ALJ O'Melinn at Plaintiff's request. [*Doc. 13-15* at 51].

*Id*. at 6-7.  That request was granted by the ALJ.  *Id*.  On October 19, 2015, the ALJ issued a new decision (hereinafter the "2015 Decision"), finding that Plaintiff "has not been under a disability . . . from September 1, 2008 through the date of this decision."  [*Doc. 13-12* at 6].  Plaintiff did not file exceptions to the ALJ's 2015 decision, and the Appeals Council did not assume jurisdiction within sixty days.  Therefore, pursuant to 20 C.F.R. § 404.984(d), the ALJ's decision became the final decision of the Commissioner.  On February 19, 2016, Plaintiff filed his complaint in this case.  [*Doc. 1*].

## II.   Standard of Review

The standard of review in a Social Security appeal is whether the Commissioner's final decision is supported by substantial evidence and whether the correct legal standards were applied.  *Maes v. Astrue*, 522 F.3d 1093, 1096 (10th Cir. 2008) (citing *Hamilton v. Sec'y of Health & Human Servs.*, 961 F.2d 1495, 1497–98 (10th Cir. 1992)).  If substantial evidence supports the ALJ's findings and the correct legal standards were applied, the Commissioner's decision stands, and the plaintiff is not entitled to relief.  *See Langley v. Barnhart*, 373 F.3d 1116, 1118 (10th Cir. 2004); *Hamlin v. Barnhart*, 365 F.3d 1208, 1214 (10th Cir. 2004); *Doyal v. Barnhart*, 331 F.3d 758, 760 (10th Cir. 2003).  A court should meticulously review the entire record but should neither re-weigh the evidence nor substitute its judgment for that of the Commissioner.  *Hamlin*, 365 F.3d at 1214; *Langley*, 373 F.3d at 1118.

"Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  *Langley*, 373 F.3d at 1118 (citation and quotation marks omitted); *Hamlin*, 365 F.3d at 1214 (citation and quotation marks omitted); *Doyal*, 331 F.3d at 760 (citation and quotation marks omitted).  An ALJ's decision "is not based on substantial

evidence if it is overwhelmed by other evidence in the record or if there is a mere scintilla of evidence supporting it." *Langley*, 373 F.3d at 1118 (citation and quotation marks omitted); *Hamlin*, 365 F.3d at 1214 (citation and quotation marks omitted). While a court may not re-weigh the evidence or try the issues *de novo*, its examination of the record as a whole must include "anything that may undercut or detract from the ALJ's findings in order to determine if the substantiality test has been met." *Grogan v. Barnhart*, 399 F.3d 1257, 1262 (10th Cir. 2005) (citations omitted). "The possibility of drawing two inconsistent conclusions from the evidence does not prevent [the ALJ]'s findings from being supported by substantial evidence." *Lax v. Astrue*, 489 F.3d 1080, 1084 (10th Cir. 2007) (citing *Zoltanski v. F.A.A.*, 372 F.3d 1195, 1200 (10th Cir. 2004)).

### III.   Applicable Law and Sequential Evaluation Process

For purposes of social security disability claims, a person establishes a disability when he or she is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 1382c(a)(3)(A); 20 C.F.R. § 416.905(a). In light of this definition for disability, a five-step sequential evaluation process (hereinafter "SEP") has been established for evaluating a disability claim. 20 C.F.R. § 416.920; *Bowen v. Yuckert*, 482 U.S. 137, 140 (1987). At the first four steps of the SEP, the claimant has the burden to show that: (1) the claimant is not engaged in "substantial gainful activity;" and (2) the claimant has a "severe medically determinable . . . impairment . . . or a combination of impairments" that has lasted or is expected to last for at least one year; and either (3) the claimant's impairment(s) meet(s) or equal(s) one of the "Listings" of

presumptively disabling impairments; or (4) the claimant is unable to perform his or her "past relevant work." 20 C.F.R. § 404.1520(a)(4)(i–iv); *Grogan*, 399 F.3d at 1261. At the fifth step of the evaluation process, the burden of proof shifts to the Commissioner to show that the claimant is able to perform other work in the national economy, considering his or her residual functional capacity (hereinafter "RFC"), age, education, and work experience. *Grogan*, 399 F.3d at 1261.

## IV.   Plaintiff's Age, Education, Work Experience, and Medical History; and the ALJ's Decision

Plaintiff was born on October 1, 1966, and was 41 years old on September 1, 2008, the alleged date of disability onset. [*Doc. 13-12* at 5 and 20]. On October 22, 2015, the date of the ALJ's 2015 Decision, Plaintiff was age 49. Thus, Plaintiff was both a "younger person age 18-44" and a "younger person age 45-49"[4] at all times pertinent to the ALJ's 2015 Decision regarding his disability claims. Although Plaintiff suffers from several severe joint impairments, he has not challenged the ALJ's ruling on the basis of those impairments. Instead, Plaintiff asserts that the ALJ erred in his determination of the limitations imposed by his mental impairments, as well as that VE Trost provided unreliable information at step five of the SEP. Therefore, the Court will not discuss Plaintiff's physical or exertional limitations in any detail. It

---

[4] *See* 20 C.F.R. §§ 404.1563(c) and 416.963(c) (defining a "younger person" as "under age 50"), but also noting that younger persons that are age 45-49 may, in some circumstances, be more limited in the ability to adjust to other work than other persons in this category. As such, the Grid Rules include "Younger individual age 45-49" as a separate category. *See, e.g.*, Grid Rule 201.17 (20 C.F.R. Pt. 404, Subpt. P, App. 2, Rule 201.17).

is sufficient to note that those physical impairments led the ALJ to find that Plaintiff now has the RFC only to perform "sedentary" work.

Plaintiff's medical records include: progress notes dated March 8, 2012 from Valencia Counseling Services, Inc. (*Doc. 13-20* at 2-6); psychiatric evaluation dated June 26, 2013 by Carol Lynn Hunter, CNS (*Doc. 13-25* at 37-41); Mental RFC dated July 28, 2015 by Paul Weeks, LPCC (*Doc. 13-28* at 19-22); treatment records for the period from October 4, 2013 to July 31, 2014 (*Doc. 13-27* at 15-51), and the period from August 22, 2014 to July 7, 2015 (*Doc. 13-28* at 24-48), from Valle del Sol; and treatment records from University of New Mexico Health Sciences Center for the period from October 22, 2013 to August 5, 2015 (*Doc. 13-29* at 3-40). Where relevant, Plaintiff's medical records are discussed in more detail below.

At step one of the five-step evaluation process, the ALJ found that, Plaintiff "has not engaged in substantial gainful activity since September 1, 2008, the alleged onset date." [*Doc. 13-12* at 8]. At step two, the ALJ found that Plaintiff has the following severe impairments: "degenerative disc disease of the lumbar spine, degenerative joint disease of the right hip, degenerative joint disease of the shoulders, osteoarthritis of the left metatarsal phalangeal joint status post[-]surgical fusion, an affective disorder, and an anxiety related disorder." *Id*. At the third step, the ALJ found that Plaintiff "does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925, and 416.926)." *Id.* at 10. In so finding, the ALJ considered Listings 1.02 (major dysfunction of a joint, 1.04 (disorders of the spine), 12.04 (affective disorders), and 12.06 (anxiety related disorders). *Id*. With respect to the paragraph B criteria for these Listings, the ALJ found that

Plaintiff has mild restriction of his activities of daily living, mild difficulties with social functioning, moderate difficulties with concentration, persistence or pace, has had no episodes of decompensation of extended duration and, therefore, does not satisfy the criteria. *Id*. at 11. The ALJ then determined that Plaintiff also did not meet the paragraph C criteria for the Listings. *Id*. at 12. Prior to step four, the ALJ determined that, from September 1, 2008, the alleged onset of his disability, Plaintiff had the RFC to:

> perform sedentary work as defined in 20 CFR 404.1567(a) and 416.967(a) except that he can lift and carry up to 10 pounds occasionally; stand and/or walk about 2 hours and sit up to 6 hours during 8 hours with normal breaks; push/pull within the sedentary exertional limitations; occasionally climb ramps or stairs; never climb ladders, ropes, or scaffolds; occasionally balance, stoop, kneel, crouch, and crawl; must avoid concentrated exposure to operational control of moving machinery, unprotected heights, and hazardous machinery; can understand, carry out, and remember simple instructions and make commensurate work related decisions; respond appropriately to supervision, coworkers, and work situations; deal with routine changes in a work setting; and maintain concentration, persistence, and pace for up to and including 2 hours at a time with normal breaks throughout the normal work day.

*Id*. In support of this RFC assessment, the ALJ found that Plaintiff's "medically determinable impairments could reasonably be expected to cause the alleged symptoms; however, [Plaintiff]'s statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely credible for the reasons explained in this decision." *Id*. at 13.

At step four, the ALJ found that Plaintiff was unable to perform his past relevant work, consisting of radiator repair technician (unskilled, very heavy work) and bricklaying (skilled, medium work), based on his current, sedentary RFC. *Id*. at 20. At step five, the ALJ found that there were jobs that existed in significant numbers in the national economy that Plaintiff could perform. *Id*. at 21. The ALJ relied on VE Trost's testimony that an individual with Plaintiff's age, education, work experience, and RFC would be able to perform the following representative

jobs: addresser, (DOT[5] 209.587-010), surveillance systems monitor (DOT 379.367-010), and document preparer (DOT 249.587-018). [*Doc. 13-13* at 29]. All three representative jobs are sedentary, and have SVP ratings of 2.[6] The job of addresser has a reasoning rating of 2, while both surveillance systems monitor and document preparer have reasoning ratings of 3.[7] VE Trost testified that each of the representative jobs she listed had the following numbers of jobs in the national economy: addresser – 11,084; Surveillance systems monitor – 13,212; and document preparer – 64,119. *Id*. The ALJ concluded that Plaintiff "has not been under a disability, as defined in the Social Security Act," from the alleged onset date through the date of the decision. [*Doc. 13-12* at 22].

---

[5] DOT stands for Dictionary of Occupational Titles, which provides information about job characteristics compiled by the Department of Labor that is used by VEs in disability hearings to determine claimants' job prospects. It is available at http://www.occupationalinfo.org/ (site last visited March 10, 2017).

[6] SVP stands for Specific Vocational Preparation, which is a rating of the amount of time it takes "a typical worker to learn the techniques, acquire the information, and develop the facility needed for average performance in a specific job-worker situation." POMS-DI-25001.00-B-79, available at https://secure.ssa.gov/apps10/poms.nsf/lnx/0425001001#b79 (site last visited March 10, 2017). SVP level 2 jobs require "[a]nything beyond [a] short demonstration up to and including one month" of such preparation. *Id*. A job with an SVP rating of 1 or 2 is considered "unskilled work." POMS-DI-25001.00-B-88, available at https://secure.ssa.gov/apps10/poms.nsf/lnx/0425001001#b88 (site last visited March 10, 2017).

[7] Although VE Trost did not testify regarding the representative jobs' reasoning levels, that information is contained in the "trailer" to the job definitions in the DOT. Reasoning, Math, and Language are divisions of General Educational Development (GED), which is described at http://www.occupationalinfo.org/appendxc_1.html (site last visited March 10, 2017). A level 2 reasoning job requires employees to be able to "[a]pply commonsense understanding to carry out detailed but uninvolved written or oral instructions. Deal with problems involving a few concrete variables in or from standardized situations," while level 3 reasoning jobs require the ability to "[a]pply commonsense understanding to carry out instructions furnished in written, oral, or diagrammatic form. Deal with problems involving several concrete variables in or from standardized situations." *Id*. As an example, the trailer to the DOT's description of "document preparer" is "GOE: 07.05.03 STRENGTH: S **GED: R3** M1 L2 SVP: 2 DLU: 86" (emphasis added), which indicates that it has a reasoning rating of 3.

## V.   Analysis

In his motion, Plaintiff argues that:  (1) the ALJ's finding, at step five of the SEP, that there are sufficient numbers of jobs in the national economy that Plaintiff can perform, is not supported by substantial evidence; and (2) the ALJ did not properly evaluate the opinion of his treating counselor, Paul Weeks, LPCC.  [*Doc. 19* at 1].  Defendant responds that:  (1) VE Trost's testimony is rendered immaterial by the Medical-Vocational grid rules, so the ALJ's reliance on that testimony was, at most, harmless error; and (2) the ALJ stated adequate reasons for his rejection of Mr. Weeks' opinions.  [*Doc. 23* at 2].   In his reply, Plaintiff asserts that the ALJ only considered evidence that supported a negative finding, and that the ALJ bears the burden of establishing the existence of jobs in the economy that Plaintiff can perform..   [*Doc. 24*].

### A.   The ALJ's Consideration of VE Trost's Testimony

Plaintiff contends that the ALJ erred by relying on VE Trost's testimony because that evidence is unreliable.   [*Doc. 19* at 20].   Defendant argues that, whether or not Plaintiff's assertion is correct, it is irrelevant to the ALJ's finding that Plaintiff is not disabled, because the Medical-Vocational Guidelines (hereinafter "Grid Rules"), 20 C.F.R. Pt. 404, Subpt. P, App. 2, direct a finding of "not disabled," without the need for vocational evidence.   [*Doc. 23* at 15-17].   Plaintiff did not reply to this argument in his reply.   [*Doc 24*].

Despite Plaintiff's failure to respond to it, the Court rejects Defendant's argument that the Grid Rules render harmless any error by the ALJ in relying on VE Trost's testimony.   It is true, as

10

Defendant contends, that Plaintiff's exertional level, age, education, and previous work experience, would result in a finding of "not disabled," if the Grid Rules were applicable.[8] It is also true that the Grid Rules reflect "administrative notice" that there are sufficient numbers of unskilled jobs available in the national economy, such that a "not disabled" directive in a Grid Rule is based on the sufficiency of those numbers. 20 C.F.R. § Pt. 404, Subpt. P, App. 2, § 200.00(b). However, "[w]here any one of the findings of fact does not coincide with the corresponding criterion of a rule, the rule does not apply in that particular case," and "full consideration must be given to all of the relevant facts of the case." *Id*. at 200.00(a). In addition, the Grid Rules specifically cover only exertional job requirements and, where a claimant has "non-exertional" limitations, the rules do not dictate a result. *Id*. at 200.00(e). In this case, Plaintiff has non-exertional impairments that render Rule 201.19 non-dispositive.[9]

Plaintiff asserts that the vocational evidence given by VE Trost is "unreliable," both because at least one of the representative jobs she selected is inconsistent with Plaintiff's limitation to "simple" work,[10] and because the job numbers she gave for individual jobs actually included entire categories of jobs, including jobs that Plaintiff cannot perform. [*Doc. 19* at 20-24].

---

[8] Grid Rule 201.19 includes individuals who are between the ages of 45 and 49, have "limited or less" education, developed skills from previous work that are not transferable, and are limited to sedentary work, and directs a finding of "not disabled."

[9] Apparently, the ALJ felt that Plaintiff did not meet the specific criteria of any Grid Rule, or he would not have needed to obtain VE testimony.

[10] As already noted (*supra,* at 9), two out of the three representative jobs selected by VE Trost have reasoning ratings of 3.

Effectively, Plaintiff contends that there is a conflict between VE Trost's testimony and the DOT (*Doc. 19* at 23), as did the Plaintiff in *Hackett v Barnhart*, 395 F.3d 1168 (10th Cir. 2005). In *Hackett*, the plaintiff's RFC included a limitation to "simple and routine work tasks." *Id*. at 1171. As in the present case, the VE in *Hackett* selected surveillance system monitor, which has a reasoning rating of 3, as one of the representative jobs that the plaintiff could perform. The *Hackett* court found that a "limitation [to simple and routine work tasks] seems inconsistent with the demands of level-three reasoning." *Id*. at 1176 (citing *Lucy v. Chater*, 113 F.3d 905, 909 (8th Cir. 1997) as "rejecting contention that a claimant limited to following only simple instructions could engage in the full range of sedentary work because many unskilled jobs in that category require reasoning levels of two or higher"). Concluding that "level-two reasoning appears more consistent with Plaintiff's RFC," the *Hackett* court reversed and remanded "to allow the ALJ to address the apparent conflict." *Id*. In so doing, the court deemed it "unfortunate" that so much time had passed since the ALJ hearing, noting that the plaintiff had been represented by counsel who could have raised the issue, but did not, and thereby deprived the ALJ of an opportunity to explain or change his ruling. *Id*. This Court agrees, and considers counsel's failure to raise the issue in this case prior to appeal to be equally "unfortunate."

    *Hackett* was the reason given in two other decisions from this District that also remanded for consideration of the conflict between a restriction to "simple" work and a representative job with a reasoning level of 3. *See Bier v. Colvin*, 15 F.Supp.3d 1143 (D. N.M. 2014) and *Holt v. Colvin*, CIV 14-0024 KBM (April 16, 2015) (unpublished). In *Bier*, the Commissioner asserted that the restrictions in that case were "not *exactly* the same," but failed to argue that the difference was "meaningful." *Bier*, 15 F.Supp.3d at 1148, n. 4. In this case, although an argument might

12

have been made for distinguishing *Hackett*, it was not and, as the Commissioner has chosen not to assert such an argument, this Court will not do so on her behalf. As was noted in *Bier*, *Hackett* "is binding precedent in this circuit." *Id*. at 1148.

Plaintiff also contends that the job numbers stated by VE Trost are "unreliable" because the numbers she gave actually cover job categories, rather than specific jobs, and that those categories include jobs that Plaintiff cannot perform. [*Doc. 19* at 20-22]. Therefore, "[t]here is no way of reliably verifying the accuracy of the number of jobs available in the national economy for the [representative] occupations." *Id*. at 20. As such, Plaintiff argues that the ALJ's finding that "there are jobs that exist in significant numbers in the national economy that [Plaintiff] can perform" is not supported by substantial evidence.[11] The Court declines to consider this argument because it depends on facts that were not developed at the ALJ hearing, and remands this case to the Commissioner for additional consideration of the availability of jobs that Plaintiff can perform.

---

[11] Plaintiff also argues, based on record evidence from other SSA cases, that the SSA acknowledges that the use of category numbers instead of specific job numbers is not substantial evidence. [*Doc. 19* at 24]. The Court declines to address this contention, however, both because job availability is a highly personalized inquiry and because Plaintiff's counsel, though clearly fully aware of this issue, did not fairly raise it at the agency level. Plaintiff's submission of a motion to compel production, including an objection to certain testimony by the VE, should and could have been reiterated and explained at the hearing, and it appears that counsel made a conscious decision not to do so. This eliminated any possibility for the VE to provide additional information and/or for the ALJ to make specific findings regarding job availability, erosion of exertion level, etc. In addition, this Court will not assume, based on extraneous evidence, that VE Trost's numbers do not accurately represent the specified jobs. In any event, this is an issue that may be affected by the proceedings on remand and, therefore, need not be addressed. *See, e.g., Robinson v. Barnhart*, 366 F.3d 1078, 1085 (10th Cir. 2004).

### B.   The ALJ's Consideration of the Opinion of Paul Weeks, LPCC

Plaintiff contends that the ALJ failed to properly explain his rejection of the opinion of treating counselor Paul Weeks.   [*Doc.* 19 at 15-20]. Defendant responds that the reasons given by the ALJ were reasonable and should be affirmed.   [*Doc.* 23 at 9-14].   The Court agrees.

Mr. Weeks first met and began counseling Plaintiff in June 2013.   [*Doc. 13-25* at 44-55]. On July 28, 2015, Mr. Weeks filled out a medical assessment form on Plaintiff's ability to perform mental work-related activities.[12]   [*Doc. 13-28* at 19-20].   As a Licensed Professional Clinical Counselor (LPCC), Mr. Weeks is not considered to be an "acceptable medical source."   *See* 20 C.F.R. § 404.1513(a).   The ALJ assigned "little weight"[13] to Mr. Weeks' medical source statement forms dated July 28, 2015, finding that "[t]he severity of symptoms indicated on [Mr. Weeks'] forms is not consistent with Mr. Weeks' treatment notes or with other evidence." [*Doc. 13-12* at 19].   In particular, the ALJ noted that several sources had indicated that Plaintiff engaged in cutting, hauling, and selling of firewood, and that Plaintiff had admitted that he felt he

---

[12] The form used by Mr. Weeks for his assessment of Plaintiff is a check-box form on which the evaluator chooses between "slight," "moderate," and "marked" limitations with respect to listed job activities  It is similar, though not identical, to Section I of the standard MRFC form used by the Social Security Administration (SSA-4734-F4-SUP).   The most significant difference between Mr. Weeks' form and the standard MRFC form is that, unlike SSA-4734-F4-SUP, the form used by Mr. Weeks did not include Section III, which is where the evaluator is expected to record "elaborations" on the "summary conclusions" in Section I.   Section III is considered to be the RFC portion of the form, where the evaluator more fully discusses his or her findings in Section I.   *See* POMS DI 25020.010.B.1 available at https://secure.ssa.gov/apps10/poms.nsf/lnx/0425020010   (site last visited March 10, 2017).   The purpose of Section I is "chiefly to have a worksheet" for the evaluator.   *Id*.   Another difference is that the standard MRFC has five choices per ability, rather than the three on Mr. Weeks' form, which are "not significantly limited," "moderately limited," "markedly limited," "no evidence of limitation in this category," and "not ratable on available evidence."

[13] Assigning "little weight" to a medical source's opinion effectively rejects it.   *See, e.g., Chapo v. Astrue*, 682 F.3d 1285, 1291 (10th Cir. 2012).

was very healthy because of his activity level.  *Id*. at 19-20 (citing *Doc. 13-29* at 13-15, 34).  In addition, the ALJ considered that Plaintiff took care of his dogs, rabbits, chickens, and sick girlfriend" and "reported that he had no problems with household chores, except that he could not do heavy lifting," that he cooked and shopped for food, had income from odd jobs, fished, walked his dogs, and "exercised weekly 'doing work over his head.'"  *Id*. (citing *Doc. 13-25* at 19).  Finally, the ALJ noted that Mr. Weeks had assessed GAF scores for Plaintiff that were inconsistent with the "many 'marked' limitations [Mr. Weeks] indicated on the forms.  *Id*.

Although Mr. Weeks is a "treating source," he is not an "acceptable medical source" and, therefore, his opinion is not entitled to controlling weight.  *See* Soc. Sec. Rep. 06-03P at *2.  Mr. Weeks did not begin seeing Plaintiff until several years after Plaintiff's alleged disability onset date, and did not prescribe his medications.  The ALJ considered Mr. Weeks' notes and assessments along with evidence from a variety of other sources.  His conclusion was that Mr. Weeks' 2015 assessments were inconsistent with both other record evidence and Mr. Weeks' own treatment notes.  In fact, not a single acceptable medical source determined that Plaintiff's mental impairments caused marked restriction of his work abilities.  With respect to "nonacceptable" medical sources, an "ALJ's decision is sufficient if it permits [the court] to 'follow the adjudicators' reasoning.'"  *Keyes-Zachary v. Astrue*, 695 F.3d 1156, 1164 (10th Cir. 2012) (quoting SSR 06-03P at *6).  Despite Plaintiff's disagreement with the ALJ's decision to accord little weight to Mr. Weeks' opinions, the Court is able to follow the ALJ's reasoning and cannot conclude that the decision is not supported by substantial evidence.  Therefore, the Court finds that this argument for reversal is without merit and should be denied.

## VI.   Conclusion

For the reasons stated above, the Court **FINDS** that Plaintiff's claim of error with respect to the ALJ's consideration of the opinion of Paul Weeks, LPCC is without merit and should be denied.  However, pursuant to *Hackett v. Barnhart*, this case is remanded for reconsideration of the availability of jobs that Plaintiff can perform.

**IT IS THEREFORE ORDERED** that Plaintiff's *Motion to Reverse and Remand for a Rehearing With Supporting Memorandum* (*Doc. 19*), is **DENIED**, in part, and **GRANTED**, in part, and the Commissioner's decision in this case is **REMANDED** for additional consideration of evidence at step five of the SEP.  A final order will be entered concurrently with this Memorandum Opinion and Order.

**IT IS SO ORDERED.**

_____
**LOURDES A. MARTÍNEZ**
**UNITED STATES MAGISTRATE JUDGE**
**Presiding by Consent**